Dear Executive Director Hare,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask the following questions:
1. Does Oklahoma law permit pari-mutuel wagering on horseraces via telephone or the Internet?
 2. Does the federal Interstate Horseracing Act, in particularthe December, 2000 amendments to the Act, legalize Internet ortelephone gambling in states where such gambling is notpermitted?
 I. Oklahoma Law Does Not Permit Pari-Mutuel Wagering On Horse Races Via Telephone Or The Internet. A. Oklahoma's Pervasive Anti-Gambling Prohibitions
¶ 1 As we noted in Attorney General Opinion 01-54, "[b]ecause of the pervasive anti-gambling public policy of the State, with its broad prohibitions against commercial gambling and lotteries — which include any scheme which combines chance, consideration and prize — we begin any analysis of the legality of a gambling activity in Oklahoma with the understanding that all gambling, unless specifically permitted, is illegal." Id. at 294. As we further noted in that Opinion, there are two limited exceptions to Oklahoma's anti-gambling laws. The first is a limited raffle exception, provided for at 21 O.S. 2001, §§ 1051[21-1051]; the second is pari-mutuel horse race wagering, as permitted in the Oklahoma Horse Racing Act, 3A O.S. 2001, §§ 200-209. A.G. Opin. 01-54,
297. Indeed, at 21 O.S. 2001, § 991[21-991] (A), the Legislature specifically notes that the activities made illegal by that section are unlawful "[e]xcept as provided for in the Oklahoma Horse Racing Act." In pertinent part, Section 991 prohibits three activities related to the question presented:
 A. Except as provided for in the Oklahoma Horse Racing Act, it shall be unlawful for any person, association, or corporation:
 1. To bet or wager upon the result of any trial of speed or power of endurance of animals or beasts; or
. . . .
 4. To receive, register, record, forward or purport or pretend to forward to or for any racetrack within or without this state, any money, thing or consideration of value offered for the purpose of being bet or wagered upon the result of any trial of speed or power of endurance of any animal or beast; or
. . . .
 6. To aid or assist or abet at any racetrack or other place in any manner in any of the acts forbidden by this section.
Id. (emphasis added) (footnote omitted).
¶ 2 The Criminal Code of Oklahoma also prohibits commercial gambling. The commercial gambling prohibited by the Oklahoma Criminal Code at 21 O.S. 2001, § 982[21-982] (A)(2) includes: "Receiving, recording or forwarding bets or offers to bets or, with intent to receive, record or forward bets or offers to bet, possessing facilities to do so[.]" Id. (emphasis added). Finally, the Criminal Code specifically prohibits the dissemination of gambling information at Section 987. That Section defines "dissemination of gambling information" as "the transmitting or receiving, by means of any communicationsfacilities, information to be used in making or settling bets."Id. § 987(A) (emphasis added).
¶ 3 It is against these specific prohibitions that we examine the Oklahoma Horse Racing Act to determine whether the Oklahoma Horse Racing Act permits pari-mutuel wagering on horse races via telephone or the Internet.
 B. The Oklahoma Horse Racing Act Only Permits Pari-Mutuel Wagers On Horse Races That Are Either Placed At A Commission-Licensed Racetrack, Or At An Off-Track Wagering Facility Of A Commission-Licensed Racetrack. The Act Does Not Provide For Wagers Placed By Telephone Or On The Internet.
¶ 4 The Oklahoma Horse Racing Act provides for the licensing of racetracks, which the Act refers to as "organization licensees." Under the provisions of 3A O.S. 2001, § 205.6[3A-205.6], organization licensees — licensed racetracks — "may provide places on the race meeting grounds" to conduct the pari-mutuel system of wagering on horse races. That section further provides that the licensed racetrack can employ no other method of betting, at no other place:
 A. Any organization licensee conducting a race meeting may provide places on the race meeting grounds at which it may conduct and supervise the pari-mutuel system of wagering on the horse races conducted by the organization licensee at the race meeting. No other place or method of betting, pool making, wagering, or gambling shall be used or permitted by the organization licensee. The pari-mutuel system of wagering shall be permitted only on horse races conducted at a racetrack where such pari-mutuel system of wagering is authorized pursuant to the provisions of the Oklahoma Horse Racing Act.
Id. (emphasis added).
¶ 5 Further, under the provisions of Section 205.6a, adopted after the provisions of Section 205.6, organization licensees are now permitted to conduct pari-mutuel horse race wagering at their designated off-track wagering facilities. Id. § 205.6a(A). Wagering at designated off-track wagering facilities, under the provisions of Section 205.6a(A)(1) is "permitted only in a county which approves or has approved the conducting of pari-mutuel horse racing in that county pursuant to the provisions of Section 209," and is not permitted "within thirty (30) miles of another organization licensee's racing enclosure without the express permission granted by the other organization licensee." Id. § 205.6a(A)(1), (2).
¶ 6 Additionally the Oklahoma Horse Racing Act, at 3A O.S.2001, § 205.7[3A-205.7] (A),[1] empowers the Oklahoma Horse Racing Commission to authorize organization licensees — licensed racetracks — to accept wagers on the results of out-of-state full racing programs for simulcast races. In both expanding places at which pari-mutuel horse race wagering may be conducted (by permitting such wagering at licensed racetracks' off-track wager facilities in Section 205.6a) and the type of wagering permitted (by permitting limited simulcast wagering at Section 205.7), the Legislature included no provisions authorizing or allowingtelephone or Internet gambling.
¶ 7 Thus, under the Oklahoma statutory scheme, pari-mutuel horse race wagering is permitted only at two locations — a licensed racetrack, or a licensed racetrack's designated off-track wagering facility. There is no provision in the Oklahoma Horse Racing Act which permits pari-mutuel horse race wagering to be conducted at or from any other location — indeed conducting wagering at other locations is not permitted — nor is there anything in the Oklahoma Horse Racing Act authorizing accepting or placing wagers by telephone or Internet. As horse race wagering is generally prohibited by Section 991 of Title 21, and is only lawful if conducted in accordance with the provisions of the Oklahoma Horse Racing Act, and as the Act makes no provision for telephone or Internet gambling, telephone or Internet gambling on horse racing is not permitted under Oklahoma law.
 C. The Oklahoma Horse Racing Commission Rules Do Not Authorize Accepting Pari-Mutuel Wagers On Horse Races By Telephone Or The Internet.
¶ 8 Chapter 65 of Title 325 of the administrative rules of the Oklahoma Horse Racing Commission deals with pari-mutuel wagering.See OAC 325:65-1-1-65-9-18. Chapter 65 is divided into five subchapters. A reading of portions of subchapter 3 of Chapter 65 in isolation might mistakenly lead the casual reader to believe that the Commission had authorized telephone wagering. A reading of Chapter 65 as a whole, however, demonstrates this is not the case.
¶ 9 In subchapter 3 of Chapter 65, the account wagering subchapter, the Commission's administrative rule OAC 325:65-3-2
deals with three types of wagering accounts: short-term accounts, long-term accounts, and voucher accounts. The provision dealing with long-term accounts contains the following phrase, "long-term accounts that are operational for any performance offered by the organization licensee, whereby wagers are placed by the account holder at a self-service terminal or by telephone[.]" Id.
65-3-2(2). Further, OAC 325:65-3-8(c) requires that any wagers made by voice telephone must be recorded. These provisions when read alone suggest that the purpose of these rules was to authorize telephone wagering. However, when read in context, it is clear that the intent of these rules was to authorize such wagering only if permitted by the Oklahoma Horse Racing Act itself.
¶ 10 At the beginning of Chapter 65, the Commission sets forth the purpose of the rules in the Chapter. At OAC 325:65-1-31, the Commission indicates that the purpose of the Chapter is to provide the "regulatory procedures for the operation of the mutuel department of an organization licensee [a licensed racetrack] . . . as authorized under the provisions of theOklahoma Horse Racing Act." (Emphasis added).
¶ 11 Additionally, in OAC 325:65-1-35 (which deals with pari-mutuel ticket sales, payments and claims, and purchasing restrictions) the Commission specifically provides that wagers by telephone or mail may not be accepted, except as provided bylaw:
 (g) The organization licensee shall not accept
mailed or telephoned wagers, except as provided by law and the rules of this Chapter, nor knowingly accept any wagers made by or for a person who is prohibited from participating in pari-mutuel wagering.
Id. (emphasis added).
¶ 12 Finally, the general account wagering requirement rule, OAC 325:65-3-1, requires that, "[t]he organization licenseeshall request authorization from the Commission before a systemof account wagering is offered." (Emphasis added). The requirement that Commission approval be obtained prior to establishing a system of account wagering, was to ensure that any account wagering offered by an organization licensee complied with both the law and the Commission's administrative rules. The Commission has never authorized telephone wagering since the enactment of the account wagering rules. (See Okla. Horse Racing Comm'n Meeting official minutes on file at the Okla. Horse Racing Comm'n.)
¶ 13 In short, the Commission's administrative rules only permit account wagering with prior authorization of the Commission, the account wagering that can be authorized under the rules must be permitted by law, and the rules make it clear that telephone wagering will only be approved if permitted by law. As concluded above, current Oklahoma law does not authorize telephone or Internet wagering. Accordingly, the Commission's administrative rules cannot be read to authorize such gambling.
 II. The Federal Interstate Horseracing Act Does Not Make Telephone Or Internet Gambling Legal In States In Which Such Gambling Is Unlawful.
¶ 14 You next ask whether the federal Interstate Horseracing Act, in particular the December 2000 amendment to the Interstate Horseracing Act, legalizes Internet or telephone gambling in states where such gambling is not permitted. The Interstate Horseracing Act, 15 U.S.C. §§ 3001-3007 was enacted by Congress in 1978. Section 3001 contains the first congressional findings and policies to be served by the Interstate Horseracing Act. Importantly, the first finding of Congress in adopting the Interstate Horseracing Act is that "the States should have theprimary responsibility for determining what forms of gambling maylegally take place within their borders[.]" Id. § 3001(a)(1) (emphasis added).
¶ 15 The second congressional finding made in enacting the Interstate Horseracing Act was that the federal government "should prevent interference by one State with the gamblingpolicies of another, and should act to protect identifiable national interests[.]" Id. § 3001(a)(2) (emphasis added).
¶ 16 The policy of Congress, as articulated in Section 3001 of the Interstate Horseracing Act, is "to regulate interstate commerce with respect to wagering on horseracing, in order to further the horseracing and legal off-track betting industries
in the United States." Id. § 3001(b) (emphasis added).
¶ 17 Under Section 3003 of the Interstate Horseracing Act, all persons are prohibited from accepting interstate off-track wagering except under the conditions set forth in the Act:
 No person may accept an interstate off-track wager except as provided in this chapter.
Id. (emphasis added).
¶ 18 The Interstate Horseracing Act then imposed various requirements on the acceptance of interstate off-track wagers. For example, under 15 U.S.C. § 3004 (a), "[A]n interstate off-track wager may be accepted by an off-track betting systemonly if consent is obtained from" "the host racing association"[2] and the "host racing commission"[3]
and the "off-track racing commission."[4] Id. (emphasis added). Further, in addition to other requirements, any "off-track betting office" — the location at which off-track wagers are accepted — is required to obtain approval of "all currently operating tracks within 60 miles of such off-track betting office[.]" Id. § 3004(b)(1)(A).
¶ 19 From the Interstate Horseracing Act's inception until December 2000, the term "interstate off-track wager" was defined to mean:
 [A] legal wager placed or accepted in one State with respect to the outcome of a horserace taking place in another State.
Id. § 3002(3) (1999) (emphasis added).
¶ 20 In December 2000, in enacting the Department of Commerce, Justice and State, the Judiciary, and Related Agency Appropriations Act, Congress at Section 629 of that Act, amended the Interstate Horseracing Act's definition of "interstate off-track wager" by adding the following phrase to the existing definition:
 [A]nd includes pari-mutuel wagers, where lawful in each State involved, placed or transmitted by an individual in one State via telephone or other electronic media and accepted by an off-track betting system in the same or another State, as well as the combination of any pari-mutuel wagering pools.
Act of Dec. 21, 2000, ch. 57, Pub.L. No. 106-553 § 629,114 Stat. 2762 (codified as amended at 15 U.S.C. § 3002 (3)) (emphasis added).
¶ 21 The question you pose is whether the Interstate Horseracing Act makes legal telephone and Internet wagers in states where telephone and Internet wagers are not lawful. The Interstate Horseracing Act's new definition of "interstate off-track wager" in its entirety reads:
 "[I]nterstate off-track wager" means a legal wager placed or accepted in one State with respect to the outcome of a horserace taking place in another State and includes pari-mutuel wagers, where lawful in each State involved, placed or transmitted by an individual in one State via telephone or other electronic media and accepted by an off-track betting system in the same or another State, as well as the combination of any pari-mutuel wagering pools[.]
15 U.S.C. § 3002 (3) (2000) (emphasis added).
¶ 22 We first note that the legislative history of the amending language indicates that the amendment was for the purpose of clarifying, not changing, the law. The House Conference Report in discussing Section 629 of the Bill — the Section that amended the Interstate Horseracing Act's definition of "interstate off-track wager" — states, "[t]he conference agreement includes a new Section 629, to clarify the Interstate Interstate Horseracing Act regarding certain pari-mutuel wagers." H. Conf. Rep. No. 106-1005, § 629 (2000) (emphasis added). Those championing open, nationwide Internet and phone horserace gambling argue that the phrase "where lawful in each State involved" contained in the amended definition of "interstate off-track wager" does not refer to telephone or electronic media gambling, but rather simply refers to pari-mutuel wagers generally. 15 U.S.C. § 3002 (3) (2000). Based on this interpretation, they conclude that the Interstate Horseracing Act makes telephone and electronic media gambling legal in all states, regardless of the states' public policy, as long as pari-mutuel horse race gambling is generally permitted in the state.
¶ 23 Such an interpretation is contrary both to the policy of the Interstate Horseracing Act, and the Interstate Horseracing Act's legislative history. As noted above, the Interstate Horseracing Act at Section 3001 finds that "the States should have the primary responsibility for determining what forms ofgambling may legally take place within their borders[.]" Id.
(emphasis added). As noted above in Oklahoma, although limited pari-mutuel horse race gambling is permitted, it is not lawful to place such wagers by telephone or through the Internet. The legislative history of the Interstate Horseracing Act's latest amendment makes it clear that it was not the intent of the Interstate Horseracing Act to nullify that public policy decision of the state. The Congressional Record of the House explains the provisions of Section 629, which amend the definition of "interstate off-track wager." In pertinent part, the Congressional Record states:
 The amendment clarifies that the Interstate Horseracing Act permits wagers made by telephone
or other electronic media to be accepted by an off-track betting system in another state provided that such types of wagers are lawful in each state involved and meet the requirements, if any, established by the legislature or appropriate regulatory body in the state where the person originating the wager resides.
146 Cong. Rec. H11,271 (2000) (emphasis added).
¶ 24 The above-quoted legislative history establishes that the phrase "where lawful in each State involved" contained in the Interstate Horseracing Act's amendment of "interstate off-track wager" refers to telephone and electronic media wagering, not to pari-mutuel wagering generally. 15 U.S.C. § 3002 (3) (2000). Indeed, if the phrase "where lawful in each State involved" simply referred to pari-mutuel wagering, it would be surplusage, as an "interstate off-track wager," by its definition, is limited to "a legal wager placed or accepted in one State with respect to the outcome of a horserace taking place in another State." Id. (emphasis added). Accordingly, we conclude that the Interstate Horseracing Act does not make legal either the placement or acceptance of telephone or Internet wagers on the outcome of horse races in states where placing or accepting telephone or Internet wagers is unlawful.
¶ 25 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Because of the pervasive anti-gambling public policy of theState of Oklahoma with its broad prohibitions against commercialgambling, 21 O.S. 2001, §§ 981-988, and lotteries, 21 O.S.2001, §§ 1051-1068 which includes any scheme that combineschance, consideration and prize — we begin any analysis of thelegality of a gambling activity in Oklahoma with theunderstanding that all gambling, unless specifically permitted,is illegal.
 2. Under the provisions of21 O.S. 2001, § 991, it isillegal to bet or wager upon the results of any trial of speed orpower or endurance of animals or beasts, and further illegal toreceive, register, record, forward to or for any racetrack in orwithin the State any money, things or consideration of valueoffered for the purposes of being bet or wagered upon the resultsof any trial of speed or power or endurance of any animal orbeast, and also illegal to aid or assist or abet any racetrack orother place in any manner in any of the acts prohibited underthat section. The activities prohibited by 21 O.S. 2001, §991are unlawful "[e]xcept as provided for in the Oklahoma HorseRacing Act." Id. § 991(A).
 3. The Oklahoma Horse Racing Act, 3A O.S. 2001, §§ 200-209permit limited pari-mutuel wagering on the results of horseraces, but only in counties which under the provisions of 3AO.S. 2001, § 209have voted to legalize pari-mutuel horse racewagering in the county.
 4. The Oklahoma Horse Racing Act at 3A O.S. 2001, §205.6(A) authorizes Commission-licensed racetracks — which theAct refers to as "organization licensees" — to provide a place onthe race meeting grounds at which it may conduct and supervisepari-mutuel wagering on horse races conducted by the pari-mutuellicensee. Under that section, no other place or method of bettingmay be used or permitted by the organization licensee.
 5. Commission-licensed racetracks — "organization licensees" —under 3A O.S. 2001, § 205.6a(A), may also now conductpari-mutuel horserace wagering at their designated off-trackwagering facilities.
 6. Neither telephone nor Internet wagering on the outcome ofhorse racing is permitted under the Oklahoma Horse Racing Act,3A O.S. 2001, §§ 200-209, or under the Oklahoma Horse RacingCommission Administrative Rules. Thus, under Oklahoma law,pari-mutuel wagering on horseraces via telephone or the Internetis illegal.
 7. The federal Interstate Horseracing Act,15 U.S.C. §§ 3001-3007, does not make legal placing or accepting wagers onthe outcome of horse races by telephone or the Internet, ineither the placing or accepting states, where placing oraccepting horse race wagers by telephone or the Internet isillegal under state law.
W.A. DREW EDMONDSON Attorney General of Oklahoma
NEAL LEADER Senior Assistant Attorney General
[1] In Senate Bill 1326, signed into law on April 29, 2002 with an emergency clause, some of the restrictions on out-of-state, full card, simulcast wagering were modified. See 2002 Okla. Sess. Laws ch. 152, § 1 (amending 3A O.S. 2001, § 205.7[3A-205.7]). The modifications are not germane to the discussion here.
[2] A "host racing association" is defined to mean "any person who, pursuant to a license or other permission granted by the host State, conducts the horserace subject to the interstate wager[.]" Id. § 3002(9).
[3] Title 15 U.S.C. § 3002 (10) defines "host racing commission" to mean "that person designated by State statute or, in the absence of statute, by regulation, with jurisdiction to regulate the conduct of racing within the host State[.]"
[4] Under the definition set forth at 15 U.S.C. § 3002 (11), the term "off-track racing commission" means "that person designated by State statute or, in the absence of statute, by regulation, with jurisdiction to regulate off-track betting in that State[.]"